**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

SABRINA M.,

Plaintiff,

v.

5:22-CV-1117 (FJS/ATB)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

HOWARD D. OLINSKY, ESQ., for Plaintiff
JOHANNY SANTANA, Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

**REPORT-RECOMMENDATION**

Plaintiff commenced this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security, denying her application for benefits. Plaintiff did not consent to the jurisdiction of a Magistrate Judge (Dkt. No. 6), and this matter was therefore referred to me for Report and Recommendation by Senior United States District Court Judge Frederick J. Scullin, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). Both parties filed briefs, which the court treats as motions under Federal Rule of Civil Procedure Rule 12(c), in accordance with General Order 18.

## I. PROCEDURAL HISTORY

On June 24, 2020, plaintiff protectively filed an application for Supplemental Security Income ("SSI"), alleging disability beginning January 1, 2014. (Administrative Transcript ("T") 13, 68). Plaintiff's application was denied initially on

December 31, 2020 (T. 84-89), and upon reconsideration on April 19, 2021 (T. 101-114). On October 8, 2021, Administrative Law Judge ("ALJ") Kenneth Theurer conducted a hearing during which plaintiff and vocational expert ("VE") Christine Spaulding testified. (T. 29-55). On November 4, 2021, the ALJ issued an order denying plaintiff's claim. (T. 13-22). This decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on September 29, 2022. (T. 1-3).

## II. GENERALLY APPLICABLE LAW

### A. Disability Standards

To be considered disabled, a plaintiff seeking DIB or Supplemental Security Income benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next

> considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

**B. Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review "– even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448. "To determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g.*, *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]"). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III. <u>FACTS</u>

Plaintiff was thirty years old on the date her application was filed. (T. 21). She earned her GED in March of 2011. (T. 37). She lived in an apartment with her two pre-teen children, her boyfriend, and her aunt. (T. 37). She has never had a driver license. (T. 37). She had a couple of part-time jobs but has not worked since 2014. (T. 37-38). Plaintiff alleges her post-traumatic stress disorder ("PTSD"), anxiety, and depression prevent her from working. (T. 38-39).

Plaintiff testified that her mental impairments can cause her to suffer anxiety attacks that sometimes result in her blacking out. (T. 39). She further testified she has

anxiety attacks two to three times per week when she is at home, and that when she is in public "it's bound to happen." (T. 44). Plaintiff stated that her depression causes her to isolate in her room, become uninterested in doing things, and has impacted her personal hygiene. (T. 45-46). Her depression also results in mood swings and verbal confrontations. (T. 46-47).

At the time of hearing, plaintiff testified she had been taking medication for her mental impairments for about four months and had not previously taken medication for those issues. (T. 39). She also testified that she had been hospitalized for suicidal attempts or thoughts "many" times. (T. 40). The most recent hospitalization occurred on January 1, 2020, five months before plaintiff's application date. (T. 40).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 15-21). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV. THE ALJ'S DECISION

The ALJ first determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since her application date of June 24, 2020. (T. 15). Next, the ALJ found that plaintiff has the following severe impairments: depressive disorder, anxiety disorder, and post-traumatic stress disorder. (*Id.*). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 16).

At step four, the ALJ found that plaintiff had the residual functional capacity ("RFC")

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: The [plaintiff] is limited to simple, routine, and repetitive tasks in a work environment free of fast paced production requirements; involving only simple, work-related decisions; with few, if any, workplace changes. The [plaintiff] is limited to no more than occasional contact with coworkers, supervisors, and incidental contact with the public (incidental defined as more than never and less than occasional, simply the job should not involve direct interaction with the public, but the hypothetical person does not need to be isolated away from the public).

(T. 17-18).

In making the RFC determination, the ALJ stated that he considered all of plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (T. 18). The ALJ further noted that he fully considered "the medical opinion(s) and prior administrative medical finding(s)" pursuant to 20 C.F.R. § 416.920c. (*Id.*). After considering plaintiff's statements regarding her symptoms, along with the other evidence of record, the ALJ concluded that the plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*). The ALJ then determined that plaintiff had no past relevant work and a limited education. (T. 21). However, the ALJ did determine that there were other jobs that exist in significant numbers in the national economy that plaintiff could perform. (*Id.*) Accordingly, the ALJ ruled that plaintiff was not disabled since the date the application was filed. (T. 22).

## V. ISSUES IN CONTENTION

Plaintiff argues that remand is warranted because the ALJ failed to adequately consider LMSW Black's opinion. (Plaintiff's Brief ("Pl.'s Br.") at 9-14) (Dkt. No. 10). Defendant contends that the Commissioner's determination should be affirmed because it was supported by substantial evidence. (Defendant's Brief ("Def.'s Br.") at 6-12) (Dkt. No. 13). For the reasons stated below, the court recommends that plaintiff's motion be denied, defendant's motion be granted, and the Commissioner's decision be affirmed.

## DISCUSSION

## VI. RFC/EVALUATING MEDICAL EVIDENCE/EVALUATING SUBJECTIVE SYMPTOMS

### A. Legal Standards

#### 1. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions plaintiff can perform and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

**2. Evaluation of Medical Opinion Evidence**

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules*

*Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853. An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and

nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

**3. Evaluation of Subjective Symptoms**

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The ALJ must "'carefully consider' all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); Social Security Ruling ("SSR") 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 2016 WL 1020935, 81 Fed. Reg. 14166-01 at 14169-70, (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of the term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use that term. SSR 16-3p, 81 Fed. Reg. at 14167. Instead, symptom evaluation tracks the language of the

regulations.[1] The evaluation of symptoms involves a two-step process. First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the plaintiff's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the plaintiff's] symptoms affect [her] ability to work.'" *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing inter alia 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606 F.3d at 49)) (alterations in original).[2]

If the objective medical evidence does not substantiate the plaintiff's symptoms, the ALJ must consider the other evidence. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013). The ALJ must assess the plaintiff's subjective complaints by considering the record in light of the following symptom-related factors: (1) plaintiff's daily activities; (2) location, duration, frequency, and intensity of plaintiff's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the plaintiff to relieve symptoms; and (7) any

[1] The standard for evaluating subjective symptoms has not changed in the regulations. Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear that the evaluation of the plaintiff's symptoms is not "an evaluation of the claimant's character." 81 Fed. Reg. at 14167. The court will remain consistent with the terms as used by the Commissioner.

[2] The court in *Barry* also cited SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) which was superceded by SSR 16-3p. As stated above, the factors considered are the same under both rulings. The 2016 ruling has removed the emphasis on "credibility."

other factors concerning plaintiff's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

**B. Analysis**

Plaintiff argues the ALJ failed to properly consider licensed master social worker ("LMSW") Felicia Black's opinion. (Pl.'s Br. at 9-14). On August 2, 2021, LMSW Black prepared a medical source statement ("MSS") relative to plaintiff's mental impairments. (T. 570-72). In the MSS, LMSW Black represented that she had treated plaintiff "as needed" for the past seven months, and indicated plaintiff's diagnoses including manic depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder, among others. (T. 570). LMSW Black opined that, due to her impairments, plaintiff's ability to remember work-like procedures; understand, remember, carry out very short and simple instructions; and maintain regular attendance were limited but satisfactory. (T. 571). She further opined plaintiff would have no useful ability to function using public transportation, traveling in unfamiliar places, and accepting instructions or responding appropriately to criticism from supervisors. (*Id.*). In addition, plaintiff would be unable to meet competitive standards maintaining attention for two-hour segments, working in coordination with others without being unduly distracted, completing a workday/workweek without interruptions from psychologically based symptoms, getting along with coworkers/peers without unduly distracting them or exhibiting behavioral extremes, responding appropriately to changes in a routine work setting, dealing with normal work stress, and interacting appropriately with the general public. (*Id.*). LMSW Black opined plaintiff would be absent from

work more than four days per month because of her impairments or treatment. (*Id.* at 572).

With respect to consistency, the ALJ found LMSW Black's opinion "inconsistent with the evidence of record[,]" which he discussed throughout the prior portions of his decision in analyzing plaintiff's mental limitations and supporting his RFC findings. (T. 16-17, 18-20). The ALJ specifically noted plaintiff exhibited "some concentration difficulty during the consultative examination [,]" while treatment records generally showed intact memory and concentration. (T. 20). The ALJ additionally noted plaintiff's other treatment records indicated intact memory and concentration. (T. 20). These records are inconsistent with LMSW Black's determination that plaintiff would be unable to meet competitive standards maintaining attention for two-hour segments. (T. 571). The ALJ also noted that plaintiff was described as cooperative during her consultative examination, despite LMSW Black's opinion that plaintiff would be "unable to meet competitive standards getting along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes." (T. 20, 571).

Although the ALJ explicitly considered the consistency of LMSW Black's opinion with the record as a whole, he was more limited in addressing the supportability factor as it related to her three-page, largely check-box opinion. The ALJ noted that LMSW Black's "opinion is less persuasive as it is not supported by [her] treatment notes." (T. 20). The complete absence of any treatment notes of LMSW Black in the record and the partial illegibility of her MSS clearly hampered the ALJ's ability to assess the supportability of her opinion in any detail. When asked to explain her opinion as to plaintiff's most extreme limitations, LMSW Black stated, in partially

illegible handwriting, that plaintiff's "over-stimulated [illegible] system limits making focused, intentionally very difficult. Symptoms related to mood disorders cause lack of consistent behaviors. PTSD with flashbacks [and] lack of financial resources." (T. 571).

The ALJ's failure to detail how he assessed the supportability of the LMSW Black's opinion in light of the limited, cryptic notes in her MSS was arguably procedural error. Nevertheless, the ALJ's decision could still be affirmed if "'a searching review of the record' assures us 'that the substance of the [regulation] was not traversed.'" *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (citations omitted). Here, the court finds the substance of the regulation was not traversed.

LMSW Black's explanation supporting her restrictive opinion, to the extent it is legible and intelligible, does not explain which mood disorders or symptoms she is referring to, or which of the limitations these statements refer to. Additionally, she did not explain what findings supported her restrictive opinion that plaintiff would be absent from work for more than four days per month. (T. 572). The court does not find persuasive plaintiff's argument that LMSW Black supported her opinion with her diagnoses, as "it is well-settled that a mere diagnosis, does not necessarily support a finding of limitations in a claimant's RFC." *Campfield v. Comm'r of Soc. Sec.*, No. 5:21-CV-0464 (LEK/ATB), 2022 WL 4591845, at *4 (N.D.N.Y. Sept. 29, 2022) (quoting *Tanya W. v. Berryhill*, No. 3:17-CV-0624, 2019 WL 315057, at *5 (N.D.N.Y. Jan 22, 2019).

Notwithstanding any possible procedural error as noted above, the ALJ's decision, when read as a whole, indicates a thorough review of plaintiff's medical records and RFC analysis that is supported by that evidence. (T. 16-22; *see* Def.'s Br. at 6-10). In analyzing the severity of the plaintiff's impairments, the ALJ relied on the medical opinions in the record. (T. 13-18). Consultative examiner Dr. Figueroa opined that plaintiff had no physical limitations based on her examination. (T. 550-53). Psychiatric consultative examiner Dr. Alexander also examined plaintiff and determined the "results of the examination appear to be consistent with psychiatric problems, but in itself does not appear to be significant enough to interfere with the [plaintiff's] ability to function on a daily basis." (T. 558). Dr. Alexander specifically opined plaintiff was only mildly limited in interacting adequately with supervisors, coworkers, and the public; sustaining concentration and performing tasks at a consistent pace; and regulating emotions, controlling behaviors, and maintaining well-being. (T. 557-58). Dr. Alexander did not find any limitations in other categories. (*Id.*). NP Shelly Peters, who also examined plaintiff, only found plaintiff limited in the area of social interaction. (T. 532).

In determining plaintiff's RFC, the ALJ cited to objective evidence in the record. (T. 18-21 (citing Exs. 1A, 3A, 5F, 7F, 10F, 11F, 12F, 13F, 14F, 15F, 16F, 20F). The ALJ noted that plaintiff has a "long history of mental health symptoms" but since the application date "has generally remained stable with sporadic and inconsistent mental health treatment." (T. 18). The ALJ also noted plaintiff received "conservative treatment" for her mental impairments and that her "mental status examinations [were]

essentially normal." (T. 21). This court's review of the medical evidence of record supports the ALJ's analysis of the opinion of LMSW Black.

The ALJ also explained that plaintiff's daily activities failed to support the level of severity alleged by plaintiff and LMSW Black. (T. 17-21). The ALJ relied on the plaintiff's hearing testimony and consultative examination reports to determine plaintiff's daily activities. (T. 18-21). Plaintiff's daily activities included cooking, cleaning, helping care for her children, doing laundry, shopping, showering, and dressing herself. (T. 19). Her hobbies include watching TV, listening to the radio, coloring, art, and DIY projects. (T. 19). Under the regulations, plaintiff's daily activities are a factor the ALJ may properly consider. 20 C.F.R. § 416.929(c)(3). *See also Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (finding the ALJ properly considered the plaintiff's varied daily activities in formulating the RFC); *Herrington v. Berryhill*, No. 3:18-CV-315, 2019 WL 1091385, at *7 (D. Conn. Mar. 8, 2019) (affirming that activities of daily living, including childcare, are appropriate factors for an ALJ to consider when assessing a plaintiff's claimed symptoms and limitations).

In sum, the ALJ's RFC findings and his ultimate determination that plaintiff was not disabled were supported by substantial evidence. LMSW Black's opinion was clearly inconsistent with the medical evidence that the ALJ detailed in his decision, and was supported only by a few cryptic and partially unintelligible notes in her MSS, not by any prior treatment notes. While the ALJ arguably should have explained more directly and more explicitly why he found LMSW Black's opinions were not persuasive, his decision, overall, more than adequately indicates the basis for his evaluation of her opinion.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiff's motion for judgment on the pleadings (Dkt. Nos. 10, 14) be **DENIED;** and it is further

**RECOMMENDED,** that defendant's motion for judgment on the pleadings (Dkt. No. 13) be **GRANTED**; and it is further

**RECOMMENDED,** that the decision of the Commissioner be **AFFIRMED**, and plaintiff's complaint (Dkt. No. 1) be **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: June 28, 2023

Andrew T. Baxter
U.S. Magistrate Judge