UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SABRINA M.,

                                                    Plaintiff,

                     v.                                            5:22-CV-1117
                                                                      (FJS/ATB)
COMMISSIONER OF SOCIAL SECURITY,

                                                 Defendant.
_____

APPEARANCES                                         OF COUNSEL

**OLINSKY LAW GROUP**                   **HOWARD D. OLINSKY, ESQ.**
250 South Clinton Street
Suite 210
Syracuse, New York 13202
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**    **JOHANNY SANTANA, SAUSA**
6401 Security Boulevard
Baltimore, Maryland 21235
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff Sabrina M. brought this action pursuant to the Social Security Act, 42 U.S.C. § 405(g) (the "Act"), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"), denying her application for benefits. *See generally* Dkt. Nos. 1, 10. The Court referred the matter to Magistrate Judge Baxter for a Report-Recommendation. *See* Dkt. No. 7. After reviewing the parties' briefs, *see* Dkt. Nos. 10, 13, 14, and the Administrative Record ("AR"), *see* Dkt. No. 9, Magistrate Judge Baxter issued a Report-

Recommendation, in which he recommended that the Court deny Plaintiff's motion for judgment on the pleadings, *see* Dkt. No. 10, and grant Defendant's motion for judgment on the pleadings, *see* Dkt. No. 13. *See* Dkt. No. 16, Report-Recommendation. Plaintiff filed objections to Magistrate Judge Baxter's recommendations, *see* Dkt. No. 17, to which Defendant did not respond.

## II. STANDARD OF REVIEW

The Court reviews *de novo* those portions of a magistrate judge's findings and recommendations to which a party has specifically objected. *See Petersen v. Astrue*, 2 F. Supp. 3d 223, 228 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C). "'A proper objection is one that identifies the specific portions of the [Report-Recommendation] that the objector asserts are erroneous and provides a basis for this assertion.'" *Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 296 (E.D.N.Y. 2013) (quotation omitted). Properly raised objections "must be specific and clearly aimed at particular findings" in the report. *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009) (citation omitted). A court reviews for clear error findings and recommendations as to which there are no properly preserved objections. *See id.* Likewise, to the extent that a party asserts "'merely perfunctory responses,' argued in an attempt to 'engage the district court in a rehashing of the same arguments'" set forth in the original submissions, the Court reviews them only for clear error. *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (quotations omitted).

### III. DISCUSSION

In her objections, Plaintiff argues that Administrative Law Judge Kenneth Theurer (the "ALJ") violated agency rulings and regulations by failing to properly consider, and ultimately rejecting, an opinion from Plaintiff's treating counselor, Felicia Black, LMSW.  *See* Dkt. No. 17, Pl's Objections, at 1.  Specifically, she asserts that the ALJ failed to address the supportability factor when affording LMSW Black's opinion "less persuasive" weight.  *See id.*  Plaintiff further objects to Magistrate Judge Baxter's "post hoc rationalization" to find that LMSW Black's opinion was not supported by the record.  *See id.* at 3-4.

Under the applicable regulations, the Commissioner must consider medical opinions and "evaluate the[ir] persuasiveness" based on the following five factors: supportability, consistency, relationship with the claimant, specialization, and 'other factors'"  20 C.F.R. § 416.920c(a)-(c).  The ALJ is required to "articulate how [he] considered the medical opinions" and "how persuasive [he] find[s] all of the medical opinions."  20 C.F.R. § 416.920c(a), (b)(1).  The two "most important factors" for determining the persuasiveness of medical opinions are consistency and supportability, and an ALJ is required to "explain how [he] considered the supportability and consistency factors" for a medical opinion.  20 C.F.R. § 416.920c(b)(2).

With regard to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(1).  The regulations provide that with regard to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence

from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2). An ALJ must consider, but is not required to discuss, the three remaining factors when determining the persuasiveness of a medical source's opinion. 20 C.F.R. § 416.920c(b)(2).

In his decision, the ALJ explicitly discussed LMSW Black's August 2021 opinion, in which she found that Plaintiff had a "limited but satisfactory" ability to remember work-like procedures, understand, remember, carry out very short and simple instructions, and maintain regular attendance. *See* AR at 20.[1] The ALJ noted LMSW Black's finding that Plaintiff was unable to meet competitive standards to maintain attention for a two-hour segment of time, to get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes, respond appropriately to changes in a routine work setting, deal with normal work stress, or be aware of normal hazards. *See id.* However, the ALJ also remarked that LMSW Black found that Plaintiff had an unlimited or very good ability to sustain an ordinary routine without special supervision, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness. *See id.* The ALJ lastly noted that LMSW Black found that Plaintiff would be off-task 20 percent of the workday and would miss more than four days of work per month. *See id.*

The ALJ found LMSW Black's opinion "less persuasive" as it was not supported by her treatment notes and was inconsistent with the record evidence. *See id.* The ALJ asserted that LMSW Black's opinion was not supported by treatment notes and that LMSW Black treats

---

[1] Page numbers following "AR" refer to the Bates Stamp numbers in the bottom right-hand corner of all documents within the Administrative Record. *See generally* Dkt. No. 9.

Plaintiff "about once a month, which is not supported by such extreme limitations." *See id.* Additionally, the ALJ concluded that the opinion was inconsistent with the record evidence showing that Plaintiff had "some concentration difficulty during the consultative examination, but she had intact memory," and she was cooperative. *See id.* In his analysis of LMSW Black's opinion, the ALJ also pointed to Plaintiff's treatment notes from the Emergency Department at the Comprehensive Psychiatric Emergency Program ("CPEP"), which generally showed that Plaintiff had intact memory and concentration. *See id.*

In his Report-Recommendation, Magistrate Judge Baxter concluded that the ALJ properly and explicitly considered the consistency of LMSW Black's opinion with the record as a whole, but the ALJ "was more limited in addressing the supportability factor as it related to [LMSW Black's] three-page, largely check-box opinion." *See* Dkt. No. 16 at 13. Magistrate Judge Baxter pointed to the ALJ's comment that LMSW Black's opinion was "not supported by [her] treatment notes," but he remarked that there is a complete absence of any of LMSW Black's treatment notes in the record. *See id.* Magistrate Judge Baxter further noted that the "partial illegibility" of LMSW Black's medical source statement ("MSS") "clearly hampered the ALJ's ability to assess the supportability of her opinion in any detail." *See id.* According to Magistrate Judge Baxter, the "ALJ's failure to detail how he assessed the supportability of LMSW Black's opinion in light of the limited, cryptic notes in her MSS was arguably procedural error." *See id.*

Nonetheless, Magistrate Judge Baxter concluded that "the ALJ's decision could still be affirmed if '"a searching review of the record" assures us "that the substances of the [regulation] was not traversed."'" *See id.* (quoting *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (citations omitted)). Magistrate Judge Baxter then found that "the

substance of the regulation was not traversed." *See id.* According to Magistrate Judge Baxter, LMSW Black's explanation supporting her restrictive opinion did not explain to which mood disorders, symptoms, or limitations she referred, nor did she explain which findings supported her opinion that Plaintiff would be absent from work more than four days per month. *See id.* Magistrate Judge Baxter also did not find persuasive Plaintiff's argument that LMSW Black supported her opinion with her diagnoses. *See id.*

"Notwithstanding any possible procedural error as noted above," Magistrate Judge Baxter found that "the ALJ's decision, when read as a whole, indicates a thorough review of [P]laintiff's medical records" and his analysis is supported by the record evidence. *See id.* at 15. Magistrate Judge Baxter reviewed Plaintiff's medical history, as the ALJ described it, including the opinions of consultative examiners Drs. Figueroa and Alexander, and Plaintiff's daily activities as she reported in her testimony and in consultative examination reports. *See id.* at 15-16. Specifically, Dr. Figueroa opined that Plaintiff had no physical limitations, whereas Dr. Alexander concluded that Plaintiff had "psychiatric problems" but that they did not "appear to be significant enough to interfere with [Plaintiff's] ability to function on a daily basis." *See id.* at 15 (citing AR at 550-53, 55). Plaintiff also cooked, cleaned, cared for her children, did laundry and shopping, watched television, and did art and DIY projects. *See id.* at 16 (citing AR at 17-21). Magistrate Judge Baxter thus concluded that the medical evidence of record and Plaintiff's activities of daily living supported the ALJ's analysis of LMSW Black's opinion. *See id.*

In sum, Magistrate Judge Baxter concluded that "LMSW Black's opinion was clearly inconsistent with the medical evidence that the ALJ detailed in his decision, and was supported only by a few cryptic and partially unintelligible notes in her MSS, not by any prior treatment

notes." *See id.* According to Magistrate Judge Baxter, although "the ALJ arguably should have explained more directly and more explicitly why he found LMSW Black's opinion[] [was] not persuasive, his decision, overall, more than adequately indicates the basis for his evaluation of her opinion." *See id.*

As stated above, Plaintiff argues that the ALJ failed to address the supportability factor in his persuasiveness analysis or in other parts of his decision with respect to LMSW Black's opinion. *See* Dkt. No. 17 at 1. Plaintiff specifically objects that Magistrate Judge Baxter offered "his own reason" to demonstrate that a rationale existed that could have underpinned a proper supportability analysis, even if the ALJ did not conduct such analysis. *See id.* at 2. Plaintiff argues that, "[o]nly by reliance on post hoc rationalization," could the Court find the ALJ's supportability analysis of LMSW Black's opinion adequate. *See id.* at 3. Plaintiff points to Magistrate Judge Baxter's apparent admission that the ALJ's "failure to detail how he assessed the supportability" of LMSW Black's opinion was "arguably procedural error." *See id.*

Nevertheless, Plaintiff argues, Magistrate Judge Baxter cites *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, *2 (2d Cir. June 7, 2022), and recommends holding that "the substance of the regulation was not traversed." *See id.* Plaintiff asserts that, although the treating-physician rule no longer applies, the Second Circuit has interpreted the regulations as requiring the agency to "'explain how [it] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [its] determination or decision.'" *See id.* (quoting *Loucks*, 2022 WL 2189293, at *1). Although the court in *Loucks* noted that affirmation could be appropriate despite an ALJ's procedural error if the substance of the regulation was not traversed, Plaintiff asserts that *Loucks* also "found it impermissible for an ALJ to ignore the articulation requirements of the current regulations,

while leaving open the possibility that a technical error could hypothetically be harmless." *See id.* at 4 (citing *Loucks*, 2022 WL 2189293, at *2). Plaintiff contends that such error was not harmless in this case because, based on the vocational expert's testimony, if the ALJ had adopted the extent of absenteeism LMSW Black endorsed in her MSS, all jobs would be eliminated, and Plaintiff would be found disabled. *See id.*

In reviewing this issue *de novo*, the Court finds that the ALJ did not commit procedural error in analyzing the supportability factor with respect to LMSW Black's opinion and finding it "less persuasive." This is not a case in which the ALJ fails to mention the supportability factor at all, or in which the Court cannot glean the ALJ's consideration of the supportability of the medical provider's opinion from his decision. *See, e.g.*, *Rylee J.C. v. Comm'r of Soc. Sec.*, No. 5:22-cv-0331 (TJM), 2023 WL 3182637, *8 (N.D.N.Y. May 1, 2023) (McAvoy, S.J.); *Stephanie F. v. Kijakazi*, No. 8:20-cv-1528 (BKS), 2022 WL 3355964, *10 (N.D.N.Y. Aug. 15, 2022) (Sannes, J.). Instead, after addressing LMSW Black's findings as to Plaintiff's abilities – which included "unlimited" and "very good" abilities in addition to restrictions and limitations – he concluded that LMSW Black's opinion was "not supported by [her] treatment notes," and LMSW Black's once-per-month treatment of Plaintiff would not support the extreme limitations she identified in her opinion. *See* AR at 20. The ALJ then pointed to "objective medical evidence and supporting explanations," as the regulations require, including that Plaintiff had "some concentration difficulty during the consultative examination, but she had intact memory," she was "cooperative," and her "treatment notes generally show intact memory and concentration." *See id.* (citing AR at 657, 664); *see also* 20 C.F.R. § 416.920c(c)(1).

Although LMSW Black's treatment notes were not included in the record, it appears that Plaintiff began seeing her for counseling sometime after her January 1, 2020 admission to CPEP

following a suicide attempt and before her December 5, 2020 psychiatric consultative examination. *Compare* AR at 313 *with* AR at 555. Plaintiff reported to psychiatric consultative examiner Dr. Alexander that she was treating with LMSW Black two to three times per month, and he recommended that she continue with psychological treatment "as currently provided" for six months. *See* AR at 558. He also noted that her prognosis was good with continued mental health treatment. *See id.* The ALJ found Dr. Alexander's opinion to be "generally persuasive." *See id.* at 20. Plaintiff's records also show that she was still treating with LMSW Black on August 6, 2021, when she returned to CPEP seeking a psychiatric referral, which the ALJ considered as well. *See id.* at 19, 660.

In the MSS that LMSW Black completed on August 2, 2021, she indicated that she saw Plaintiff as needed for seven or more months. *See id.* at 570. She diagnosed Plaintiff with manic depressive disorder, generalized anxiety disorder, post-traumatic stress disorder ("PTSD"), borderline personality disorder, bipolar disorder, and an adjustment disorder. *See id.* According to LMSW Black, Plaintiff's symptomology related to these disorders caused her to suffer from a lack of consistent behaviors. *See id.* at 571. LMSW Black indicated that Plaintiff would "become better [with] decrease in symptomology by therapeutic means [and] psycho-pharmacology." *See id.* at 570. LMSW Black also reported that Plaintiff's treatment included building her distress-tolerance skills and other coping mechanisms that allow for a decrease in symptomology. *See id.* at 572.

As the ALJ asserted in his decision, LMSW Black noted that Plaintiff's ability to work at a regular job would be impacted by her ability to focus intentionally for sustained periods of time. *See id.* at 20, 572. It appears that LMSW Black further commented that Plaintiff had an "over-stimulated arousal system," which made intentional focus difficult. *See id.* at 571.

Additionally, LMSW Black twice remarked that Plaintiff suffers from dissociations and flashbacks as a result of her current trauma and PTSD. *See id.* at 571-72. The ALJ also pointed to LMSW Black's finding that Plaintiff had "unlimited" or "very good" ability to sustain an ordinary routine without special supervision and "limited but satisfactory" ability to maintain regular attendance and be punctual within customary, strict tolerances, but she nonetheless concluded that Plaintiff would be absent from work more than four days per month. *See id.* at 20, 571-72.

      A review of the record demonstrates that the ALJ considered all of the "objective medical evidence and supporting explanations" sufficient to establish the supportability factor in finding that LMSW Black's opinion was "less persuasive." 20 C.F.R. § 416.920c(c)(1). Nonetheless, even if the Court found, as Magistrate Judge Baxter did, that the ALJ committed procedural error in failing to establish the supportability factor with respect to that opinion, a review of the record, as discussed above, assures the Court that "'"the substance of the [regulation] was not traversed"'" and any error was harmless. *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, *2 (2d Cir. 2022) (summary order) (quoting *Estrella* [*v. Berryhill*], 925 F.3d [90,] 96 [(2d Cir. 2019)] (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004))).[2] Thus, after reviewing the record *de novo*, the Court finds that, for all the reasons stated herein as well as in Magistrate Judge Baxter's Report-Recommendation, there is sufficient evidence in the record to support the ALJ's determinations. Finally, the Court has reviewed the remainder of the Report-Recommendation for clear error and has found none.

---

[2] Plaintiff correctly notes that the court in *Loucks* did not overrule the ALJ's responsibility to consider the consistency and supportability factors in determining the persuasiveness of a medical opinion. However, as Plaintiff herself admits, the Second Circuit has left open the possibility that a technical error with respect to this assessment may be harmless. *See* Dkt. No. 17 at 3-4; *see also Loucks*, 2022 WL 2189293, at *2.

## IV. CONCLUSION

Having reviewed the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Baxter's Report-Recommendation, *see* Dkt. No. 16, is **ACCEPTED in its entirety**; and the Court further

**ORDERS** that, for the reasons Magistrate Judge Baxter stated in his Report-Recommendation and for the additional reasons stated herein, Defendant's motion for judgment on the pleadings, *see* Dkt. No. 13, is **GRANTED,** and Plaintiff's motion for judgment on the pleadings, *see* Dkt. No. 10, is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: September 18, 2023
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge